470 So.2d 653 (1985)
Danny CLEMONS
v.
STATE of Mississippi.
No. 55587.
Supreme Court of Mississippi.
May 29, 1985.
Mark S. Duncan, Philadelphia, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Danny Clemons was indicted, tried and convicted in the Circuit Court of Neshoba County on a charge of attempted rape, and was sentenced to serve a term of ten (10) years in the custody of the Mississippi Department of Corrections. Clemons has appealed to this Court and assigns four (4) errors in the trial below.
Appellant contends that the lower court erred in overruling his motion for (1) a directed verdict and (2) new trial on the ground that the verdict was against the overwhelming weight of the evidence. Both of these assignments will be discussed under the first contention.
On October 19, 1983, at about 6:30 p.m., the prosecutrix, a white 43-year-old music teacher and organist for the Beacon Street Baptist Church, Philadelphia, Mississippi, went to the church and entered the sanctuary for the purpose of practicing wedding music. After approximately fifteen (15) minutes, she locked the organ and proceeded to leave the church through the same hallway she had used to enter the area. Just prior to exiting the hall, which was dark, a black male grabbed her around the neck from behind and repeated over and over, "I'm going to get you this time." She detected an unusual quality in the attacker's voice and that he pronounced his words distinctly. The prosecutrix testified that she struggled with her assailant about two minutes; that he used only his right arm in the struggle, holding her from behind; that he was grabbing at her blouse attempting to unbutton it; that she was unable to see his face or identify him; that he was wearing a short-sleeved shirt; that she bit him on the inside of his right arm, which was around her neck and he never used his left arm and hand in the assault; and that she finally managed to work her way to the door where her attacker pushed her out and ran. She described the manner in which she bit her attacker:
Q. Now, what did you do after he grabbed you, ...?

*654 A. I started wrestling with him. He was trying to undo my clothes, my blouse, and he was pulling and snatching and trying to unbutton my blouse, and he got me around the neck, and I was just wrestling with him. I never screamed, and I got  he got his arm close enough to my mouth, and I bit the punk out of him.
Q. All right. Now, ..., I want to ask you something now about this. In your best recollection, where did you bite him?
A. Around in here (indicating).
Q. Now, I want to ask you something about this. With regard to your teeth, what is your situation with regard to your teeth?
A. I have one partial, one tooth. I have a partial in the upper.
Q. Is your partial plate upper?
A. Yes, in the front.
Q. What does this do with regard to being able to bite?
A. I can bite. I can bite an apple.
Q. Can you bite as hard as if you had natural teeth?
A. It doesn't seem to bother me yet.
Q. Now, after you bit him, tell us whether or not you saw any blood or anything?
A. I did not.
* * * * * *
CROSS-EXAMINATION:
* * * * * *
Q. And somehow you managed to open the door?
A. I bit him before I opened the door.
Q. Oh, you bit him. Did you bite him hard?
A. Just as hard as I could.
Q. Can you bite hard? You told us a few minutes ago you could bite an apple.
A. I can bite an apple. I can eat corn-on-the-cob.
Q. And you bit him just as hard as you could, isn't that correct?
A. That's right.
Q. Where did you bite him at?
A. Along in this vicinity. (Indicating)
Q. The inside part of his arm, around his elbow?
A. That's right.
After the attack, the prosecutrix ran into the fellowship hall where there were a number of people and hysterically told them, "Somebody's after me. Somebody's after me."
On the night of October 20, 1983, the prosecutrix and her husband went to the Philadelphia Police Station for her to view a lineup consisting of six individuals. She was unable to identify any of them by sight after viewing them through a one-way mirror. Thereupon, an officer "cracked the door a little" and had each one to walk within a few feet of it and repeat the words, "I'm going to get you this time." She identified the voice of the last person in the lineup as that of the appellant.
Sheriff Glenn Waddell testified for the State that he went to Coleman's Barbeque in the City of Philadelphia, located directly across the street from Beacon Street Baptist Church, to interview an individual for a job as deputy sheriff. He arrived there at 6:00 p.m. and remained until 6:30. About 6:15, he saw appellant in front of Wells-Lamont Glove Factory, which was approximately 150 to 200 yards from the front door of the church. When he left Coleman's Barbeque at 6:30, he saw appellant standing on the corner of the driveway leading into the Wells-Lamont parking lot. He was dressed in a light green or blue, short-sleeved pullover shirt.
Police Officer Bobby Anderson attended the lineup at approximately 8 p.m. on October 20. He had been investigating the case from the time the matter was reported. Officer Anderson did not see any scars, bite marks, fresh scratches or bruises on appellant's arm.
The appellant did not testify and introduced five (5) witnesses who established an alibi for him during the time of the alleged attack.
In Pew v. State, 172 Miss. 885, 161 So. 678 (1935), a 14-year-old black male seized a white female from behind by the shoulder *655 and throat as she was passing under a railroad tressel. She was holding a purse and bag of groceries. The young woman screamed and Pew ordered her to cease screaming, but she continued to do so, whereupon, he turned her loose and ran. The attack bruised the throat of the woman and left the imprint of the assailant's fingers on her throat. He did not attempt to seize her purse or groceries. In reversing the conviction, the Court quoted from Green v. State, 67 Miss. 356, 7 So. 326 (1890), as follows:
"The evidence is insufficient to support the verdict of the jury. We may conjecture the purpose of the defendant to have been to commit a rape, but, on the facts disclosed, it is conjecture only, and not an inference reasonably drawn from the evidence. The probabilities may be greater that a rape was intended, rather than robbery or murder; but mere probability of guilt of a particular crime, and that, too, springing more from instinct than from proved facts, cannot support a verdict of guilty. There is great danger of improper convictions in cases of this character, and, while the courts should not for that reason invade the province of the jury, the danger admonishes us of the necessity of standing firmly upon the right and duty of proper supervision and control over them."
172 Miss. at 888-89, 7 So. at 326. See also Tremaine v. State, 245 Miss. 512, 148 So.2d 517 (1963); State v. Lindsey, 202 Miss. 896, 32 So.2d 876 (1947); and Spurlock v. State, 158 Miss. 280, 130 So. 155 (1930).
We distinguish this case from Harden v. State, 465 So.2d 321 (Miss. 1985), wherein the appellant propositioned his victim in a lewd matter, exposed himself, seized the woman, and attempted to drag her away with him. The evidence was substantial that the attacker's lack of success in his felonious endeavor resulted from the woman's resistance, and not his abandonment. The Court found that the lewd suggestion to the victim, coupled with the defendant's physically grabbing his victim in attempting to carry her away, only to have her break free, were sufficient to support a finding of intent to rape.
In the case sub judice, the assailant attempted to unbutton the prosecutrix's blouse, but he used no lewd or lascivious language. When he said "I will get you this time" there is no indication in the record what was meant by that statement or that he ever tried to "get her" the first time.
A significant fact here is the identification of appellant by his voice. The record does not indicate whether a statement by appellant or any other person through a door which was "cracked a little" would muffle, change or interfere with the tone of the speaker's voice. However, we agree with the learned trial judge that senses other than sight, viz, hearing, smelling, and feeling, are strong indicators of identification under proper circumstances. See Miller v. State, 373 So.2d 1004, 1006 (1979); McCrory v. State, 342 So.2d 897 (Miss. 1977).
Another important and significant fact is the absence of a bite mark, abrasion, or bruise on the inside of appellant's right arm (soft tissue) the next day, after the prosecutrix had "bitten the punk out of the inside of his right arm."
We have made a careful study of the record in this case and are of the opinion that prosecution failed to establish appellant's guilt beyond reasonable doubt and that the judgment of the lower court must be reversed.
In view of our decision, it is not necessary to discuss the remaining assignments of error. However, for the benefit of the Bench and the Bar, we note that one assignment of error presented a question of the lower court's refusal to permit one of appellant's attorneys, Honorable Clayton Taylor Lewis, to testify before the jury that he examined appellant's arm on the day following the assault and there were no marks, abrasions or bruises on appellant's arm. Mr. Lewis was appointed as assistant counsel for appellant on the day *656 before trial, after another attorney withdrew because of a conflict. Appellant was entitled to have Attorney Lewis' testimony submitted to the jury and the refusal to admit same under the close question involved here, constitutes reversible error. Richardson v. State, 436 So.2d 790 (Miss. 1983).
The judgment of the lower court is reversed and the appellant is discharged.
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.