528 So.2d 828 (1988)
John R. PRUITT
v.
STATE of Mississippi.
No. 57622.
Supreme Court of Mississippi.
July 13, 1988.
*829 Wade M. Baine, Gulfport, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
On November 8, 1985, John Richard Pruitt was indicted by the grand jury of Harrison County for attempted rape and as a recividist. On January 27, 1986, he was tried before a jury, found guilty of attempted rape, found to be an habitual offender and sentenced to serve ten (10) years in the custody of the Mississippi Department of Corrections without parole. From this conviction and sentence Pruitt appeals.
We reverse and render.
On August 12, 1985, Robin Gatlin went to Terry's, a lounge in Gulfport, for a drink after work. While waiting on her neighbor to join her, she went to the ladies' room. As she stood at the counter in front of the mirror, she saw a man standing behind her. She asked him if he was waiting for someone, to which he replied, "Yes, you ____, take off your clothes." Robin then moved against the wall and the defendant put his hand on her throat and said, "Take off your ___ clothes or I am going to beat your face in with this helmet [motorcycle helmet]." Robin immediately started talking to him and he took his hand from her throat. During their non-stop conversation, the man announced that he was going to rape her and threatened her if she did not take her clothes off. Finally, Robin suggested that they walk out of the bathroom together and sit at the bar and sit down and talk, saying, "If you want to talk to me, I'll listen." At some point, according to Robin's testimony, the man told her she was free to leave, but Robin was afraid to walk past him. However, the man never touched her after he took his hands from her throat, never took her clothes off, never took his off, and never exposed himself. Shortly thereafter, another woman walked into the bathroom, after which the man walked Robin out of the bathroom with his hand on the back of her neck. They sat at the bar and ordered drinks and talked. The woman from the bathroom came by the bar and asked Robin if everything was all right. Robin told her, "No, don't leave me." The woman sat on the other side of the bar, and Robin told the man that the woman was her neighbor and he had better go or the woman would want to know what was going on. At that point, the man let her go. During their conversation at the bar, the man told Robin his name and showed her his driver's license. After Robin went to sit by the woman, the man left the bar. At trial, Robin identified the defendant as her assailant. She testified that the defendant was not intoxicated throughout the incident. After she left the lounge, Robin went home and called the police and filed a complaint.
Deborah Smith, the woman who walked into the bathroom, testified that when she got off work on the evening of August 12, 1985, she went to Terry's Lounge and went straight to the women's bathroom. When she pushed on the door it wouldn't open immediately, so she pushed again and when she walked in she saw a man sitting on the counter and Robin Gatlin standing next to him. She told them that she was just coming in to fix her makeup, at which point *830 Robin grabbed her arm and said, "Don't leave. Tell him you're my neighbor." Ms. Smith agreed to stay, and continued fixing her makeup. At that point, the man and Robin turned to leave and Robin again grabbed the woman's arm and said, "I'll be with you in a few minutes." Ms. Smith said, "Sure, I'll be out in a minute." When Ms. Smith went by the bar, Robin grabbed her arm again and said, "I'll join you for a drink in five or ten minutes." At that point, Ms. Smith went to the doorman and told him there was some problem with this couple. She then sat down at the other end of the bar. In a few minutes, Robin came over to her and told her what was going on. Ms. Smith identified the defendant as the man in the bathroom. Ms. Smith did not think that Pruitt was intoxicated. She had never seen either of these two people before.
The doorman at Terry's Lounge, Steven Baugh, testified that Ms. Smith came to him and told him there was a problem with this couple. He sat near them at the bar and then went behind the bar and washed glasses and kept an eye on them. He could not hear their conversation. He did state, though, that while sitting at the bar, Pruitt had his right arm crossed over, holding Robin's arm.
At the close of the state's evidence, the defendant moved for a directed verdict. The trial judge admitted that it was a close question of abandonment, but denied the motion.
In his defense, Pruitt recalled the victim, Robin Gatlin, and Steven Baugh, both of whom basically reiterated their previous testimony. Pruitt did not testify.
At the close of the defendant's case, Pruitt renewed his motion for directed verdict, but again, the trial judge determined that it was a jury issue as to whether or not Pruitt committed an overt act and whether or not he abandoned his attempt.

DISCUSSION
Although Pruitt assigns four errors, we find it necessary to discuss only one:
The Court Committed Reversible Error in Not Granting a Directed Verdict at the Conclusion of the State's Case, Again Committed Reversible Error by Not Granting a Directed Verdict at the Conclusion of the Defendant's Case, and Finally, Committed Reversible Error by Not Granting a J.N.O.V. at the Conclusion of the Trial.
At the close of the state's evidence, Pruitt moved for a directed verdict. The trial judge denied the motion, stating, however, that the question was close as to the issue of abandonment. Pruitt renewed his motion at the close of the defendant's case and again it was denied, as was his motion for j.n.o.v. or new trial after the jury returned its verdict of guilty.
Pruitt makes a two-pronged argument under this assignment of error as to the sufficiency of the evidence. First, he argues that there was no overt act toward the accomplishment of rape. Second he argues that the rape was not accomplished because he voluntarily abandoned his intent.
The crime of attempt consists of three elements: 1) an intent to commit a particular crime; 2) a direct ineffectual act done toward its commission, and 3) failure to consummate its commission. Edwards v. State, 500 So.2d 967, 969 (Miss. 1986). See also Bucklew v. State, 206 So.2d 200, 202 (Miss. 1968).
As to intent, the evidence shows without dispute that Pruitt announced his intent to rape Ms. Gatlin. As to the overt act, the evidence also shows without dispute that Pruitt backed Ms. Gatlin up against a wall with his hand on her throat and demanded that she disrobe or else he would beat her with his helmet. The question is whether or not this act went toward the commission of rape. In Harden v. State, 465 So.2d 321 (Miss. 1985), this Court held that "a lewd suggestion to the victim coupled with the defendant's physically grabbing his victim and attempting to carry her away only to have her break free are under the facts of this case sufficient." Id. at 322. Also, in Alexander v. State, 520 So.2d 127 (Miss. 1988), this Court found that where a defendant placed a towel over *831 the victim's face, applied pressure sufficient to make her uncomfortable, and pulled up her shirt, such acts were sufficient to fulfill the "overt act" requirement for an attempted rape. We find that in this case, defendant's grabbing the victim by the throat and threatening to beat her up if she did not take off her clothes, and announcing his intent to rape her, constitute an overt act toward the commission of rape.
As to Pruitt's abandonment argument, the requirement is that he must voluntarily abandon his intent and not have his intent frustrated by the resistance of the victim or the intervention of a third party. See Edwards v. State, 500 So.2d at 969; Harden v. State, 465 So.2d at 322; Alexander v. State, 520 So.2d at 130. Pruitt here argues both sufficiency of the evidence and weight of the evidence. The victim's testimony shows that at some point while in the bathroom, Pruitt told Ms. Gatlin she was free to go, but that she was afraid to leave. Soon after, a third party, Ms. Smith, came into the bathroom where Ms. Gatlin implored her not to leave. Then, Pruitt guided Ms. Gatlin out of the bathroom with a hand on the back of her neck. He took her to the bar and sat with a hand on her arm for another 15 or 20 minutes until Ms. Gatlin pointed out to him that unless he let her go Ms. Smith would begin to suspect something was wrong.
It is clear that Pruitt did not accomplish his intent; it is uncontradicted that he voluntarily announced to Ms. Gatlin that he had given up his intent before Ms. Smith entered the bathroom. Under our attempt statute, Miss. Code Ann. § 97-1-7 (1972), prevention or frustration must have resulted from extraneous causes. West v. State, 437 So.2d 1212, 1214 (Miss. 1983); Bucklew v. State, 206 So.2d 200, 202 (Miss. 1968); see also In Interest of R.T., 520 So.2d 136, 137 (Miss. 1988); cf. Murray v. State, 403 So.2d 149, 152 (Miss. 1981). Although Ms. Smith did enter the bathroom, she did so after Pruitt abandoned his intent  an abandonment which he not only announced to Ms. Gatlin, but also which he evidenced by the fact that he did not touch her after he released his hand from her throat; neither did he continue in his efforts to disrobe her nor did he disrobe himself or expose himself. Ms. Gatlin's resistance was ineffective to prevent Pruitt from raping her, since he obviously was able to physically dominate her under the surrounding circumstances. The facts are not such that the jury in this case could have found beyond a reasonable doubt that Pruitt did not voluntarily abandon his attempt to rape Robin Gatlin. See generally, In Interest of R.T., 520 So.2d 136, 137 (Miss. 1988); Clemons v. State, 470 So.2d 653, 655 (Miss. 1985); Harden v. State, 465 So.2d 321, 323-26 (Miss. 1985); West v. State, 437 So.2d 1212, 1214 (Miss. 1983); cf. Murray v. State, 403 So.2d 149, 153 (Miss. 1981).
This is not to say that Pruitt committed no criminal act. He could have been charged, for instance, under Miss. Code Ann. 97-3-7(1) (Supp. 1986) (simple assault) and possibly others. Therefore, our only inquiry here is whether there was sufficient evidence to support a jury finding that Pruitt did not abandon his attempt to rape Robin Gatlin. We hold there was not.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ., dissent by separate opinion.
HAWKINS, P.J., and ANDERSON, GRIFFIN and ZUCCARO, JJ., dissent by separate opinion.
HAWKINS, Presiding Justice, dissenting:
Admittedly, this is a close case on the question of whether Pruitt voluntarily, and without outside influence, abandoned his intent to rape Robin Gatlin. His behavior is quite bizarre, no one will ever know all that was going through his head. Considering all the circumstances of this case, in my view there was sufficient evidence to support a conclusion by the jury that *832 Pruitt's change in plans was not entirely of his own volition. The cases cited by the majority do not suggest otherwise.
I would affirm.
ANDERSON and GRIFFIN, JJ., join this dissent.
ANDERSON, Justice, dissenting:
With respect to my colleagues, I dissent.
The jury was adequately instructed with respect to Pruitt's defense of abandonment as follows:
INSTRUCTION D-6
If you find from the evidence, beyond a reasonable doubt, that John R. Pruitt freely and voluntarily abandoned his intent to commit the crime of attempted rape before he performed any overt act toward commission of that crime, and if you further believe that there was not an outside cause prompting his abandonment, then you shall find defendant not guilty.
Once the jury rejects this theory of abandonment, I would submit that this Court should not substitute its judgment for that of the fact-finder.
I would affirm the verdict and sentence.
HAWKINS, P.J., and GRIFFIN and ZUCCARO, JJ., join this dissent.