601 So.2d 872 (1992)
Sammy Joe ROSS
v.
STATE of Mississippi.
No. 89-KA-1013.
Supreme Court of Mississippi.
June 17, 1992.
Joseph C. Langston, Langston Langston Michael & Bowen, Booneville, for appellant.
Michael C. Moore, Atty. Gen., W. Glenn Watts, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This attempted-rape case arose on the appeal of Sammy Joe Ross from the ten-year sentence imposed on July 7, 1988 by the Circuit Court of Union County. The appellant timely filed a notice of appeal and dispositively raises the issue:
Whether the trial court erred in denying the defendant's motion for directed verdict on the charge of attempted rape.
This Court reverses and renders the conviction for attempted rape.

A. Facts
On September 16, 1987, sometime around 2:15 in the afternoon, Deputy Sheriff Edwards of the Union County Sheriff's Department was driving on Highway 30 heading east. Before he turned south onto Highway 9, he saw an oncoming truck, a white, late-model Ford pickup, turn left onto the first gravel road. Because the truck had out-of-county tags and turned down a road on which several crimes had occurred, Edwards jotted down the tag number, which action he described as routine practice.
*873 Dorothy Henley[1] and her seven-year-old daughter lived in a trailer on the gravel road. Henley was alone at home and answered a knock at the door to find Sammy Joe Ross asking directions. Henley had never seen Ross before. She stepped out of the house and pointed out the house of a neighbor who might be able help him. When she turned back around, Ross pointed a handgun at her. He ordered her into the house, told her to undress, and shoved her onto the couch. Three or four times Ross ordered Henley to undress and once threatened to kill her. Henley described herself as frightened and crying. She attempted to escape from Ross and told him that her daughter would be home from school at any time. She testified:
I started crying and talking about my daughter, that I was all she had because her daddy was dead, and he said if I had a little girl he wouldn't do anything, for me just to go outside and turn my back.
As instructed by Ross, Henley walked outside behind her trailer. Ross followed and told her to keep her back to the road until he had departed. She complied.
Henley was able to observe Ross in her sunlit trailer with the door open for at least five minutes. She stated that she had an opportunity to look at him and remember his physical appearance and clothing. Henley also described Ross's pickup truck, including its color, make, and the equipment i.e., a tool-box.
Deputy Sheriff Edwards, while returning on Highway 9 where he had previously observed the white pickup, saw Union County Sheriff Bryant's car parked, but did not stop. A short time later, he heard the sheriff radio for county units to be on the lookout for a white pickup truck driven by a white male. Edwards "radioed" back to tell Bryant of the previous sighting. Edwards then radioed in a registration check on the tag number, which turned out to be registered to Ross. Later that day, Sheriff Bryant photographed the tire tracks at Henley's home and compared them with photographs of the tires on Ross's truck. He described the comparison as a "definite match." Ross claimed an alibi as his defense.

B. Procedural History
On December 21, 1987, a Union County grand jury indicted Sammy Joe Ross for the attempted rape of Henley, charging that Ross "did unlawfully and feloniously attempt to rape and forcibly ravish" the complaining witness, an adult female. On January 25, 1988, Ross waived arraignment and pled not guilty.
On June 23, 1988, The jury found Ross guilty. On July 7, the court sentenced Ross to a ten-year term. When Ross moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial, the court denied the motion. Ross timely filed a notice of appeal.

II. ANALYSIS

Whether the trial court erred in denying the defendant's motion for directed verdict on the charge of attempted rape.
Although other issues relating to pre-trial lineup and in-court identification are raised, the primary issue here is whether sufficient evidence presents a question of fact as to whether Ross abandoned his attack as a result of outside intervention. Ross claims that the case should have gone to the jury only on a simple assault determination. Ross asserts that "it was not ... Henley's resistance that prevented her rape nor any independent intervening cause or third person, but the voluntary and independent decision by her assailant to abandon his attack." The state, on the other hand, claims that Ross "panicked" and "drove away hastily."
As recited above, Henley told Ross that her daughter would soon be home from school. She also testified that Ross stated if Henley had a little girl, he wouldn't do anything to her and to go outside [the house] and turn her back [to him]. Ross moved that the court direct a verdict in his favor on the charge of attempted rape, which motion the court denied.
*874 The trial court instructed the jury that if it found that Ross did "any overt act with the intent to have unlawful sexual relations with [the complainant] without her consent and against her will" then the jury should find Ross guilty of attempted rape. The court further instructed the jury that:
before you can return a verdict against the defendant for attempted rape, that you must be convinced from the evidence and beyond a reasonable doubt, that the defendant was prevented from completing the act of rape or failed to complete the act of rape by intervening, extraneous causes. If you find that the act of rape was not completed due to a voluntary stopping short of the act, then you must find the defendant not guilty.
Ross did not request, and the court did not give, any lesser included offense instructions.
Review of a directed verdict made at the close of the Defendant's case consists of this Court's applying a reasonable doubt standard to the verdict, while viewing the evidence in a light most favorable to the verdict. Stever v. State, 503 So.2d 227, 230 (Miss. 1987). This Court may not then discharge the defendant unless the Court concludes that no reasonable, hypothetical juror could have found the defendant guilty. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
The statutory definition of the crime of attempted rape lies in two statutes: rape, section 97-3-65(2)[2] and attempt[3], section 97-1-7. In the Interest of R.T., 520 So.2d 136, 137 (Miss. 1988); see Miss. Code Ann. §§ 97-3-65(2) (Supp. 1988), 97-1-7 (1972). The Mississippi Code defines rape as "forcible ravish[ing]." Miss. Code Ann. § 97-3-65(2) (Supp. 1988). In Harden v. State, 465 So.2d 321, 325 (Miss. 1985), this Court held that lewd suggestions coupled with physical force constituted sufficient evidence to establish intent to rape. See also Clemons v. State, 470 So.2d 653, 655 (Miss. 1985).
The crime of attempt to commit an offense occurs when a person
shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same... .
Miss. Code Ann. § 97-1-7 (1972). Put otherwise, attempt consists of "1) an intent to commit a particular crime; 2) a direct ineffectual act done toward its commission, and 3) failure to consummate its commission." Pruitt v. State, 528 So.2d 828, 830 (Miss. 1988) (attempted rape was voluntarily abandoned by defendant when he told victim she was free to leave); accord Edwards v. State, 500 So.2d 967, 969 (Miss. 1986); Bucklew v. State, 206 So.2d 200, 202 (Miss. 1968).
The Mississippi attempt statute requires that the third element, failure to consummate, result from extraneous causes. West v. State, 437 So.2d 1212, 1214 (Miss. 1983) (attempted sexual battery case). Thus, a defendant's voluntary abandonment may negate a crime of attempt. Where a defendant, with no other impetus but the victim's urging, voluntarily ceases his assault, he has not committed attempted rape. See In the Interest of R.T., 520 So.2d 136, 137 (Miss. 1988). In Pruitt, 528 So.2d at 830-831, where the assailant released his throathold on the unresisting victim and told her she could go, after *875 which a third party happened on the scene, the Court held that the jury could not have reasonably ruled out abandonment. See also West v. State, 437 So.2d at 1213-14 (Miss. 1983) (finding no attempted sexual battery).
In comparison, this Court has held that where the appellant's rape attempt failed because of the victim's resistance and ability to sound the alarm, the appellant cannot establish an abandonment defense. Alexander v. State, 520 So.2d 127, 130 (Miss. 1988). In the Alexander case, the evidence sufficiently established a question of attempt for the jury. The defendant did not voluntarily abandon his attempt, but instead fled after the victim, a hospital patient, pressed the nurse's buzzer; a nurse responded and the victim spoke the word "help." Alexander, 520 So.2d at 128. The Court concluded, "[T]he appellant ceased his actions only after the victim managed to press the buzzer alerting the nurse." Alexander, 520 So.2d at 130. In another case, the court properly sent the issue of attempt to the jury where the attacker failed because the victim resisted and freed herself. Harden v. State, 465 So.2d 321, 325 (Miss. 1985).
Thus, abandonment occurs where, through the verbal urging of the victim, but with no physical resistance or external intervention, the perpetrator changes his mind. At the other end of the scale, a perpetrator cannot claim that he abandoned his attempt when, in fact, he ceased his efforts because the victim or a third party intervened or prevented him from furthering the attempt. Somewhere in the middle lies a case such as Alexander, where the victim successfully sounded an alarm, presenting no immediate physical obstacle to the perpetrator's continuing the attack, but sufficiently intervening to cause the perpetrator to cease his attack.
In this case, Ross appeals the denial of his motion for directed verdict; thus, he challenges only the sufficiency of the evidence, that is, whether it raised a sufficient factual issue to warrant a jury determination. Even under this rigorous standard of review, Ross's appeal should succeed on this issue. The evidence does not sufficiently raise a fact question as to whether he attempted rape. The evidence uncontrovertibly shows that he did not, but instead abandoned the attempt.
The key inquiry is a subjective one: what made Ross leave? According to the undisputed evidence, he left because he responded sympathetically to the victim's statement that she had a little girl. He did not fail in his attack. No one prevented him from completing it. Henley did not sound an alarm. She successfully persuaded Ross, of his own free will, to abandon his attempt. No evidence shows that Ross panicked and hastily drove away, but rather, the record shows that he walked the complainant out to the back of her trailer before he left. Thus, the trial court's failure to grant a directed verdict on the attempted rape charge constituted reversible error. As this Court stated in Pruitt, 528 So.2d 831, this is not to say that Ross committed no criminal act, but "our only inquiry is whether there was sufficient evidence to support a jury finding that [Ross] did not abandon his attempt to rape [Henley]." This Court holds that there was not.

III. CONCLUSION
Ross raises a legitimate issue of error in the sufficiency of the evidence supporting his conviction for attempted rape because he voluntarily abandoned the attempt. This Court reverses and renders.
REVERSED AND APPELLANT DISCHARGED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] The complainant's name has been changed.
[2] Miss. Code Ann. § 97-3-65(2) (Supp. 1991) provides:

Every person who shall forcibly ravish any person of the age of fourteen (14) years and upward, or who shall have been convicted of carnal knowledge of any person about the age of fourteen (14) years without such person's consent, ...
[3] Miss. Code Ann. § 97-1-7 Attempt to commit offense

Every person who shall design and endeavor to commit an offense, and shall do any overt act toward commission thereof, but shall fail therein, or shall be prevented from committing the same, or conviction thereof, shall where no provision is made by law for the punishment of such offense, be punished as follows:
... .
if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted.