# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-DR-02810-SCT

*STEPHEN ELLIOT POWERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2000 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL<br>BY: LOUWLYNN VANZETTA WILLIAMS<br>ROBERT M. RYAN<br>WILLIAM J. CLAYTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL<br>BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | E. LINDSEY CARTER |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION FOR LEAVE TO FILE MOTION FOR POST-CONVICTION RELIEF, DENIED - 10/19/2006 |

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.	Stephen Elliot Powers was charged with the 1998 murder and attempted rape (capital murder) of Elizabeth Lafferty. Powers was represented at trial by retained counsel. At the conclusion of the trial, Powers was convicted and sentenced to death by lethal injection. This

Court affirmed both the conviction and sentence on direct appeal. ***Powers v. State***, 883 So.2d 20 (Miss. 2003), *cert. denied*, 543 U.S. 1155, 125 S.Ct. 1297, 161 L.Ed.2d 121 (2005). Pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Powers now requests of this Court leave to seek post-conviction relief in the trial court. Miss Code Ann. § 99-39-27 (Supp. 2006). *See also* Miss. Code Ann. § 99-39-7 (Supp. 2006). Finding his application to be without merit, we deny Powers leave to seek post-conviction relief.

### FACTS AND PRIOR COURT PROCEEDINGS

¶2. We glean certain relevant facts from this Court's opinion concerning Powers's direct appeal:

> On the afternoon of June 13, 1998, Elizabeth Lafferty was introduced to Powers and his nephew, "Junior" or "Jay" Otis, Jr. by a mutual friend, Eddie Barnes. The four decided to cook out and drink beer at Lafferty's home. Later, Otis and Barnes left the Lafferty home, leaving Powers and Lafferty alone. Lafferty's body was discovered at approximately 1:00 a.m. the next morning in the hallway. Lafferty had been shot five times, three at a point-blank range in the back of the head, once under the chin, and once in the temple. The State's experts were unable to determine the order in which the shots occurred. The bullets came from a .22 caliber gun.

***Powers***, 883 So.2d at 24. Lafferty's body was discovered in her home in the early morning hours of June 14, 1998. Her body was in the hallway with her legs pulled apart at a 90- degree angle, and her body was nude from the waist down, except for her "wadded up" shorts around her left ankle. Her feet had been locked in place in opposite doorways of the hall. There were wounds on her arms and right leg consistent with defensive posturing. ***Id.***

¶3. Police obtained a search warrant for Powers's apartment and subsequently arrested him. After waiving his Miranda rights, Powers led police to the murder weapon and then confessed

to killing Lafferty, although he denied any sexual contact. The jury found Powers guilty of murder and further found that the killing was done intentionally during the commission of an attempted rape. The jury likewise found that the crime was especially heinous, atrocious or cruel. *Id.* at 25. Powers was thereafter sentenced to death by lethal injection. This Court affirmed the conviction and sentence on direct appeal. *Id.* at 37.

## DISCUSSION

¶4. In his direct appeal, Powers's raised two primary issues – (1) whether the evidence of the underlying felony of attempted rape was sufficient to support the capital murder charge; and, (2) whether his trial counsel rendered ineffective assistance. In the latter issue, Powers asserted that he received ineffective assistance from his trial counsel as to (a) the hearing on the motion to suppress Powers's confession; (b) the jury selection process; (c) the presentation of a coherent defense; (d) the failure to have the capital murder charge reduced to that of non-capital (simple) murder or manslaughter; (e); the failure to submit lesser-included offense or lesser-offense jury instructions; and, (f) the sentencing phase, due to (I) the failure to investigate and develop mitigation evidence, (ii) an inadequate closing argument to the jury, and, (iii) the failure to object to the State's two aggravating circumstances submitted via jury instructions.

¶5. In today's petition seeking post-conviction relief (PCR motion), Powers, through the Mississippi Office of Capital Post-Conviction Counsel, submits eight issues (with the first issue containing three sub-parts) which he deems to be sufficient to undergird his PCR motion. The issues are restated for the sake of discussion as being (1) denial of effective assistance

3

of trial counsel due to trial counsel's failure to (a) obtain expert assistance, (b) challenge the State's exercise of peremptory challenges on African-American jurors, and (c) investigate and present mitigating evidence; (2) inapplicability of procedural bars and res judicata to his PCR claims; (3) inadequate notice of the specific offenses for which he was being charged; (4) subjection to the "death-row phenomenon;" (5) denial of the right to trial by an impartial jury; (6) the cumulative effect of errors committed during the trial; (7) insufficient evidence to support the capital murder charge; and, (8) the disproportionate imposition of the death penalty.

### I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

¶6.    "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-93 (1984).   A claimant must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense of the case.   *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.   "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984) (citing *Strickland*, 466 U.S. at 687).

¶7.    Defense counsel is presumed competent. *Hughes v. State*, 892 So.2d 203, 208 (Miss. 2004) (citing *Bell v. State*, 879 So.2d 423, 431 (Miss. 2004)).   But even if professional error

4

is shown, a reviewing court must determine whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991) (citing *Handley v. State*, 574 So.2d 671 (Miss. 1990)) (other citations omitted). In a death penalty case, the ultimate inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently re-weighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698.

¶8. The claim of ineffective assistance of counsel was raised by Powers on direct appeal and, after a thorough discussion by this Court, found to be without merit. *Powers*, 883 So.2d at 27-36. Powers now raises additional instances of alleged professional error by trial counsel which were not presented on direct appeal. These additional issues were capable of presentation on direct appeal; therefore, collateral review of the issue as a whole is procedurally barred by the post-conviction relief statute. Miss. Code Ann. § 99-39-21.[1]

---

[1]This statute states, in its entirety:

(1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

(2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual

5

Procedural bar notwithstanding, we proceed to alternatively discuss these three claims of ineffective assistance of trial counsel.

### A. Failure to Obtain Expert Assistance.

¶9. With regard to the claim that counsel failed to obtain expert assistance, "[t]his Court weighs on a case by case basis whether the denial of expert assistance for an accused is prejudicial to the assurance of a fair trial and will grant relief only where the accused demonstrates that the trial court's abuse of discretion is so egregious as to deny him due process and where his trial was thereby rendered fundamentally unfair." *Weatherspoon v. State*, 732 So.2d 158, 160 (Miss. 1999).

---

issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

(3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

(4) The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.

(5) The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.

(6) The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.

Miss. Code Ann. § 99-39-21.

6

¶10.    The State called Dr. Stephen Hayne, a forensic pathologist, who testified that Lafferty suffered defensive wounds on both arms as well as her right leg. Powers now contends that trial counsel was ineffective for not countering that testimony with an expert of his own. Powers offers the affidavit of a forensic dentist, Dr. Michael Bowers, who asserts that the positioning of the victim's body was "staged" by the perpetrator for some reason other than attempted rape. According to his affidavit, Dr. Bowers is a dentist with a private practice in Ventura, California. He is also a licensed attorney in California, a Board Forensic Odontologist and a certified senior crime scene analyst. Likewise, Dr. Bowers has been the Deputy Medical Examiner for the Ventura County Coroner's Office since 1988. He has also testified as an expert in the field of forensic dentistry in several states and additionally, he has published articles and textbooks on forensic dental evidence. Dr. Bowers stated via his affidavit that he had reviewed the entire testimony of various law enforcement officials and Dr. Hayne relating to this case, that he had reviewed the crime scene video and autopsy video, and, that he had studied Mississippi's "attempt" statute, Miss. Code Ann. § 97-1-7 (Rev. 2000). In his affidavit, Dr. Bowers likewise stated:

> 4.    The forensic testimony in this case is silent regarding any post mortem proof of attempted rape inflicted on or in the murder victim.
>
> 5.    The crime scene photos and video presented to the court in this case does not present sufficient or convincing forensic evidence to support the charge of attempted rape in the commission of a murder.
>
> 6.    The location and positioning of the body are strong signs that the positioning was "staged" for reasons other than attempted rape. The positioning of the legs and panties are surely shocking, even to experienced investigators but the perpetrator's intent is open to multiple interpretations. The absence of autopsy

7

findings of sexual activity on or in the decedent's body clearly makes the State's theory of "attempted rape" only a hypothesis which can't be tested scientifically. The alternative intent of the perpetrator such as "staging" exists is an equally viable explanation.

7. The lack of physical findings regarding an attempt to rape makes the positioning of the body as just seen in the photographs insufficient to determine with medical certainty that an attempted rape was committed.

¶11. As to expert testimony, we now apply the *Daubert* test. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Jones v. State*, 918 So.2d 1220, 1226-27 (Miss. 2005), in addressing the issue of admissibility of expert testimony, we stated, inter alia:

> Our current [Miss. R. Evid.] Rule 702, which is now identical to Fed. R. Evid. 702, states:
>
> > If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
>
> The comment to this amended rule clearly reveals this Court's effort to address the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Thus, after years of applying the *Frye* standard on the issue of the admissibility of expert testimony, we now apply the *Daubert* standard. *See, e.g.*, *Hughes v. State*, 892 So.2d 203, 210 (Miss. 2004) (fn 1); *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So.2d 31, 60 (Miss. 2004); *Janssen Pharmaceutica, Inc. v. Armond*, 866 So.2d 1092, 1103 (Miss. 2004) (Graves, J., specially concurring); *Mississippi Transp. Com'n v. McLemore*, 863 So.2d 31, 35-40 (Miss. 2003); *McGowen v. State*, 859 So.2d 320, 340-41 (Miss. 2003).

In *McLemore*, we acknowledged that under the *Frye* standard:

> "[I]t is not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if that person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman."

863 So.2d at 36 (citing *Kansas City S. Ry. v. Johnson*, 798 So.2d 374, 382 (Miss. 2001) (quoting *Hooten v. State*, 492 So.2d 948 (Miss. 1986)).

*Jones*, 918 So.2d at 1226-27.

¶12.    In applying *Daubert* to the facts and circumstances peculiar to the case sub judice, such a conclusion by Dr. Bowers that the positioning of Lafferty's body was somehow "staged" is speculative at best, and such testimony does not counter the State's evidence by way of Dr. Hayne, the forensic pathologist who performed the autopsy, who testified that the victim suffered defensive wounds.    It is highly doubtful that any expert testimony regarding the positioning of the body would have likely resulted in a different verdict.    After all, the victim was found nude from the waist down with her shorts and underwear bunched at one ankle, as well as with five gunshot wounds to her head.

¶13.    Having found this issue to be procedurally barred, we likewise now find, alternatively, upon a discussion of this issue, that this issue has no merit.

### B.    Failure to Challenge Peremptory Strikes.

¶14.    Powers argues that *Miller-El v. Cockrell*, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), is an intervening decision which excepts presentation of this issue from the

9

procedural bar.[2]   In ***Miller-El***, the United States Supreme Court found that potential jurors had been excluded on the basis of race despite the prosecution's announcement of race-neutral reasons at trial.   With regard to a jury with only one African-American, the Supreme Court held, "Happenstance is unlikely to produce this disparity." 125 S.Ct. at 2325, 162 L.Ed.2d at 214 (citing ***Miller-El v. Cockrell***, 537 U.S. 322, 342, 123 S.Ct. 1029, 154 L.Ed.2d 931)).

¶15.   While the decision in ***Miller-El*** stands for the proposition that it is possible for potential jurors to be excluded on the basis of race despite the presentation of a race-neutral reason for the exercise of a peremptory strike, it does not change the basic holding of ***Batson*** that the use of peremptory strikes based upon race is prohibited.   ***Batson v. Kentucky***, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69, 88 (1986).   Powers's trial jury unquestionably had only one African-American juror; however, this Court on direct appeal specifically held that, from the totality of the record on this issue, there was no viable ***Batson*** claim to be raised by trial counsel and that it was "inconceivable how counsel could have been ineffective, and thus Powers's case prejudiced by failure to raise such a challenge." ***Powers***, 883 So.2d at 31. This issue is procedurally barred from reconsideration in that the holding of ***Miller-El*** does not constitute an intervening case whose import would have changed the outcome of Powers's

_____

[2]Miss. Code Ann. § 99-39-27(9) (Supp. 2006) states, in pertinent part that excepted from a procedural bar or res judicata prohibition "are those cases in which the prisoner can demonstrate either that there has been intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence...."

trial. Alternatively, in considering the merits of this issue, we find this issue to still be without merit.

### C.     Failure to Present Mitigating Evidence.

¶16.    Ths issue was specifically presented and rejected on direct appeal, *Powers*, 883 So.2d at 34-36, and is now procedurally barred from collateral review. "The record reflects that trial counsel personally interviewed family members and friends of Powers, the girlfriend of Powers's brother, the officers involved, Dr. West, Powers's mother, and Powers." *Id.* at 35. In discussing this issue, we acknowledged trial counsel's efforts at investigating and developing evidence of mitigating factors but concluded that "there was very little to be found relative to these factors." *Id.*    Recognizing that the jury had before it undisputed evidence that Lafferty had been shot five times in the head at close range, this Court held:

> Trial counsel was not ineffective because he chose to pursue the path of mercy instead of rehashing the information produced during the guilt phase, producing unsupportive family members, emphasizing evidence of a drinking problem, and utilizing testimony of his drinking friends.

*Id.* at 35. This issue is procedurally barred, and alternatively, it is still without merit.

### II.     PROCEDURAL BARS.

¶17.    Powers argues that the legal landscape of death penalty appeals has changed and that the new guidelines for defense counsel in capital post-conviction cases illustrates that his trial counsel was somehow not qualified to represent him such that he should be allowed to present claims not previously made, or to again present claims previously decided.   There is, however, no constitutional right to errorless counsel. *Jordan v. State*, 918 So.2d 636, 647 (Miss. 2005)

11

(citing *Davis v. State*, 743 So.2d 326, 334 (Miss. 1999)). *See also Foster v. State*, 687 So.2d 1124, 1130 (Miss. 1996); *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991); *Cabello v. State*, 524 So.2d 313, 315 (Miss. 1988). The right to effective counsel simply affords the right to have competent counsel. *Jordan*, 918 So.2d at 647.

¶18. Powers also argues that his claims which are otherwise subject to a procedural bar should nonetheless be entertained "no matter how egregious the violation of Mississippi's procedural rules" and despite his opportunity to raise them previously. This claim is not supported by any relevant federal or state authority and is without merit. The procedural bars of waiver, different theories, and res judicata as well as the exceptions thereto contained in Miss. Code Ann. § 99-39-21(1)-(5) are clearly applicable to death penalty post-conviction relief applications. The petitioner carries the burden of demonstrating that his claim is not procedurally barred. Miss. Code Ann. § 99-39-21(6). An alleged error should be reviewed, in spite of any procedural bar, only where the claim has not previously been litigated or where an appellate court has reversed itself on an issue previously submitted. Such is not the case here and the issue is therefore without merit. *See, e.g., Foster v. State*, 687 So.2d 1124, 1129, (Miss. 1996). There is thus no change in our treatment of procedural bars and res judicata such as to allow Powers to somehow avoid these prohibitions to raise certain issues.

## III. AGGRAVATING FACTORS NOT CHARGED IN THE INDICTMENT.

¶19. Powers argues that his death sentence must be vacated because the aggravating circumstances which charged capital murder were not included in the indictment. This issue

could have been raised on direct appeal and is thus now procedurally barred from consideration.

¶20. Powers cites to the rulings of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), in which the Court held unconstitutional a sentencing scheme where a judge rather than a jury determined whether there were aggravating circumstances present to warrant imposition of enhanced punishment.

¶21. Apprendi was charged with firing shots into the home of an African-American family in New Jersey. He pleaded guilty to possession of a firearm for an unlawful purpose and, after the judge accepted the guilty pleas, the prosecutor moved for an enhanced sentence on the basis that it was a hate crime. Apprendi argued that he was entitled to have the finding on enhancement decided by a jury. The U.S. Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

¶22. In 2002, the U.S. Supreme Court decided *Ring v. Arizona*. *Ring* addressed the issue of whether the Arizona capital sentencing process as upheld in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), in which the jury decided guilt and the judge made findings on aggravating factors, could survive the *Apprendi* decision. The Supreme Court decided it could not:

13

> [W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S., at 647-649, 110 S.Ct. 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," *Apprendi*, 530 U.S. at 494, n. 19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury.

*Ring*, 536 U.S. at 609. The Court specifically noted, "Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him." *Id.* at 597 n. 4. Ring did not contend that his indictment was constitutionally defective as does Powers.

¶23. As a practical matter our circuit and county court rules provide that an indictment shall be "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." URCCC 7.06. A defendant is thus not entitled to formal notice in the indictment of the aggravating circumstances to be employed by the prosecution inasmuch as a capital murder indictment puts a defendant on sufficient notice that the statutory aggravating factors will be used against him. *Smith v. State*, 729 So.2d 1191, 1224 (Miss. 1998) (citing *Williams v. State*, 445 So.2d 798, 804-05 (Miss. 1984)).

> We believe that the fact that our capital murder statute lists and defines to some degree the possible aggravating circumstances surely refutes the appellant's contention that he had inadequate notice. Anytime an individual is charged with murder, he is put on notice that the death penalty may result. And, our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment.

14

*Smith*, 729 So. 2d at 1224 (quoting *Williams*, 445 So.2d at 804-805). This Court has consistently found this issue (failure to charge the aggravating factors in the indictment) to be without merit. *Havard v. State*, 928 So.2d 771, 800-01 (Miss. 2006); *Knox v. State*, 901 So.2d 1257, 1269 (Miss. 2005); *Berry v. State*, 882 So.2d 157, 172 (Miss. 2004). Once again, in today's case, we find this issue to be without merit.

## IV.    THE EIGHTH AMENDMENT AND THE DEATH ROW PHENOMENON.

¶24.    Powers argues, without the benefit of authority, that he has suffered cruel and unusual punishment simply by being placed on death row. A claim based on the Eighth Amendment could have been raised on direct appeal and is now be procedurally barred from further consideration. Powers claims to be languishing in fear of his execution and the uncertainty of when it will be carried out. Powers cites to the writings of existentialist author Albert Camus. Powers argues that his execution some eight years after the offense will serve no purpose. This Court has considered and rejected this argument before. *Wilcher v. State*, 863 So.2d 776, 834 (Miss. 2003); *Russell v. State*, 849 So.2d 95, 144-45 (Miss. 2003); *Jordan v. State*, 786 So.2d 987, 1028 (Miss. 2001). This issue is thus without merit.

## V.    FAIR AND IMPARTIAL JURY.

¶25.    This issue could have been raised on direct appeal and is thus procedurally barred from further consideration. Procedural bar notwithstanding, this issue has no merit. Powers claims that during the course of deliberations, juror Kevin Cuevas made it known that he was personally acquainted with the victim because she had delivered packages to his door. Powers

claims bias on the part of the juror because he purportedly told another juror that the victim had an outgoing personality. The record reflects, however, that Cuevas stated during voir dire that he was an acquaintance of the victim, Elizabeth Lafferty. Powers cannot now claim surprise or any other prejudice to his defense. Therefore, this issue likewise has no merit.

## VI. CUMULATIVE ERROR.

¶26. Powers argues generically that the alleged preceding errors, taken as a whole, deprived him of a fair trial. Because Powers has not shown any actual error by the trial court, there can be no cumulative effect and no adverse impact upon his constitutional right to fair trial. Stated differently, we clarified our review of perceived cumulative error in death penalty cases in **Byrom v. State**, 863 So.2d 836, 847 (Miss. 2003). In **Byrom**, we stated:

> What we wish to clarify here today is that upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect. That having been said, for the reasons herein stated, we find that errors as may appear in the record before us in today's case, are individually harmless beyond a reasonable doubt, and when taken cumulatively, the effect of all errors committed during the trial did not deprive Michelle Byrom of a fundamentally fair and impartial trial.

*Id.* at 847, ¶13. Applying the **Byrom** criteria to Powers's case, we find that, while errors may have been committed, these errors "are individually harmless beyond a reasonable doubt, and when taken cumulatively, the effect of all errors committed during [Powers's] trial did not deprive [Powers] of a fundamentally fair and impartial trial." *Id.* Additionally, "[a] criminal defendant is not entitled to a perfect trial, only a fair trial." **McGilberry v. State**, 741 So.2d

894, 924 (Miss. 1999) (citing ***Sand v. State***, 467 So.2d 907, 911 (Miss. 1985)). This issue is without merit.

## VII. INSUFFICIENT EVIDENCE OF ATTEMPTED RAPE.

¶27. This issue was thoroughly discussed on direct appeal and this Court found that the State had presented sufficient evidence of an attempted rape. ***Powers***, 883 So.2d at 25-27. This issue is thus procedurally barred; however, procedural bar notwithstanding, we will briefly discuss this issue. The offense of attempted rape requires proof of three elements: "[1] an intent to commit rape; [2] a direct ineffectual act done toward its commission; and, [3] the failure to consummate its commission." ***Powers***, 883 So.2d at 26-27 (citing ***Ross v. State***, 601 So.2d 872, 874 (Miss. 1992); ***Pruitt v. State***, 528 So.2d 828, 830 (Miss. 1988)). In ***Powers***, we held that "based upon all the direct evidence, and especially the physical evidence at the crime scene as depicted, inter alia, by the color photographs of the victim, the jury could reasonably find that an attempted rape occurred." ***Id.*** at 27. Notwithstanding the fact that this issue is procedurally barred, having alternatively addressed the merits of this issue, we find the issue to be without merit.

## VIII. DEATH SENTENCE DISPROPORTIONATE TO THE OFFENSE.

¶28. We thoroughly addressed the proportionality issue on direct appeal, and this issue is thus procedurally barred. Once again, procedural bar notwithstanding, we proceed here to briefly discuss this issue. On direct appeal, this Court conducted a proportionality review as required by the Eighth Amendment to the United States Constitution and Miss. Code Ann.

17

§ 99-19-105(3) (Rev. 2000). In so doing, we specifically found that "there is no evidence supporting a finding that [Powers's] death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor" and that the evidence supported the finding that all the statutory aggravating circumstances were present and had been proven beyond a reasonable doubt. This Court has already concluded that Powers's death sentence was not disproportionate or excessive relative to the offense or to those sentences imposed in other similar cases. *Powers*, 883 So. 2d at 36-37. Consequently, the issue is now procedurally barred from collateral review. Miss. Code Ann. § 99-39-21(3). However, notwithstanding the procedural bar, this issue is likewise wholly devoid of merit.

## CONCLUSION

¶29. For the reasons stated, the application of Stephen Elliott Powers for leave to file a motion for post-conviction relief in the Circuit Court of Forrest County is denied.

¶30. **APPLICATION FOR LEAVE TO FILE MOTION FOR POST-CONVICTION RELIEF, DENIED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**

18