# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-DP-00474-SCT

*STEPHEN ELLIOT POWERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2000 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JUDY T. MARTIN |
| |         MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 12/18/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Stephen Elliot Powers has appealed the capital murder conviction and death sentence imposed upon him by the Circuit Court of Forrest County for the June 14, 1998, murder of Elizabeth Lafferty. Attempted rape was the underlying charge which elevated this homicide to capital murder.  Powers's motion for judgment notwithstanding the verdict or, alternatively, a new trial was denied, and this direct appeal ensued.  Represented on appeal by different counsel than his trial counsel, Powers submits these

several errors: (1) the evidence of attempted rape was insufficient to support the capital murder charge; (2) ineffective assistance of trial counsel during the motion to suppress; (3) ineffective assistance of trial counsel during the guilt phase; (4) ineffective assistance of trial counsel during jury selection; (5) ineffective assistance of trial counsel for failing to have the capital murder charge reduced to simple murder or manslaughter; (6) ineffective assistance of trial counsel in instructing the jury; and (7) ineffective assistance of trial counsel during the sentencing phase.

¶2.     We find Powers's arguments are without merit and, therefore, affirm the conviction for capital murder and sentence of death.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3.     On the afternoon of June 13, 1998, Elizabeth Lafferty was introduced to Powers and his nephew, "Junior" or "Jay" Otis, Jr. by a mutual friend, Eddie Barnes. The four decided to cook out and drink beer at Lafferty's home. Later, Otis and Barnes left the Lafferty home, leaving Powers and Lafferty alone. Lafferty's body was discovered at approximately 1:00 a.m. the next morning in the hallway. Lafferty had been shot five times, three at a point-blank range in the back of the head, once under the chin, and once in the temple. The State's experts were unable to determine the order in which the shots occurred. The bullets came from a .22 caliber gun.

¶4.     Photographs were introduced at the trial to explain the position of the body in the hallway where it was found. The maxim "a picture is worth a thousand words" certainly holds true in this case. While words cannot fully illustrate the prone position in which the victim was found, suffice it to say that the victim's legs were spread open more than ninety degrees, with a foot in each of the doors of the bedroom and bathroom, which are on opposite sides of the hallway where she was found. The left leg was raised slightly higher than the right and wedged within the doorjam to the bedroom. Her shorts were "wadded

up" around the left ankle (keeping in mind that except for these wadded up shorts, she was nude from the waist down). The body had several injuries consistent with defensive posturing, including abrasions to the back of her right upper arm, back of her left hand, and on the right knee. Although Lafferty was menstruating, no feminine hygiene products were found on or near her body.

¶5.     Upon learning that Powers was the last person seen with Lafferty and that he had a .22 caliber gun on the night in question, police obtained a search warrant. On Sunday, June 14 at approximately 8:00 p.m., the police searched Powers's apartment and then arrested him. Powers was advised of his *Miranda* rights, but signed a waiver of those rights. Powers began writing a statement that the gun was in the woods, then stopped and agreed to take the police to the gun. After leading the police on several pretextual excursions to locate the gun, Powers finally led the police to a shed behind his apartment where a .22 caliber gun and bullets were found. Powers made the statement that "you did not have a case until I gave you the murder weapon." Thereafter, Powers was taken back to the police station where he produced a written statement admitting that he killed Lafferty and left her body in her final position and state of undress. Powers told police that he and Lafferty "struggled with the gun, and the gun went off." Powers denied having sex with Lafferty and claimed that she voluntarily partially undressed herself because she was "playing" around with him.

¶6.     After making the statement, Powers asked to use the restroom. A search of his person revealed what appeared to be a blood-stained note to his mother located in his crotch area. The handwritten note said: "Everything I do is wrong." However, the note was never tested to determine whether the stains were indeed blood or not. Powers also admitted taking a computer from Lafferty's home and placing it in a nearby alley, where it was later picked up by Powers's brother and/or his girlfriend.

3

¶7. While cleaning Powers's apartment after his arrest, his mother found a used sanitary napkin rolled up in one of Powers's baseball caps. This was turned over to the police. At trial, Powers's mother testified for the State. On cross-examination, she testified that Powers's girlfriend gave the used sanitary napkin to Powers as some sort of "hex" or "voodoo-type thing" to keep him from having sex with any other female. Although the sanitary napkin was sent to the State Crime Lab for analysis, the Crime Lab personnel were unable to positively match the blood on the napkin with that of the victim.

¶8. At trial, witnesses placed Powers at the scene with the gun immediately prior to the shooting. Additionally, testimony revealed that after Lafferty's body was found, a nervous Powers told his friend that "something happened" to Lafferty.

¶9. The jury found all four of the *Enmund* factors: the defendant actually killed, attempted to kill, intended that a killing take place, and contemplated that lethal force would be employed. *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982). The jury also found, beyond a reasonable doubt, that the capital offense was committed while Powers was engaged in the commission of or an attempt to commit the crime of rape and that the capital offense was especially heinous, atrocious, or cruel. Finally, the jury found that there were "insufficient mitigating circumstances to outweigh the aggravating circumstances" and "that the defendant should suffer death."

## ANALYSIS

### I. WHETHER THE EVIDENCE OF ATTEMPTED RAPE WAS SUFFICIENT TO SUPPORT THE CAPITAL MURDER CHARGE.

¶10. In his first assignment of error, Powers contends that he should have been granted a judgment notwithstanding the verdict or, alternatively, a new trial because the evidence did not support the underlying offense of attempted rape, which elevated this case to one of capital murder. The standards of review for

4

a motion for judgment notwithstanding the verdict and motion for a new trial both are soundly embedded in our case-law:

> A motion for judgment notwithstanding the verdict implicates the sufficiency of the evidence. *Sheffield v. State*, 749 So.2d 123, 125 (Miss.1999). The standard of review for the legal sufficiency of the evidence is well-settled:
>
>> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
>
> *Id.* (quoting *Gleeton v. State*, 716 So.2d 1083, 1087 (Miss. 1998)).
>
> A motion for a new trial, however, falls within a lower standard of review than does that for a judgment notwithstanding the verdict. *Id.* at 127. A motion for a new trial simply challenges the weight of the evidence. *Id.* This Court has explained that it will reverse the trial court's denial of a motion for a new trial only if, by doing so, the court abused its discretion. *Id.* (quoting *Gleeton v. State*, 716 So.2d at 1088). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* (quoting *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983)). This Court has also explained that factual disputes are properly resolved by a jury and do not mandate a new trial. *McNeal v. State*, 617 So.2d 999, 1009 (Miss. 1993).

*Holloway v. State*, 809 So.2d 598, 605-06 (¶¶ 21-22) (Miss. 2000).

¶11. Powers asserts that as to the underlying offense of attempted rape, the State's case was based entirely on circumstantial evidence. In his written statement, which he later denied at a suppression hearing, Powers admitted that he and Lafferty struggled with the gun and that he shot Lafferty, but specifically denied having sex with Lafferty. In his statement, Powers wrote:

And she walk in the hall and call me. When I went back their [sic] she were [sic] talk [sic] crazy still. about she wanted to do something and I told her no. And she got mad and started to play with me. And had one leg in short and she just stayed playing with me and I got ready to go she didn't want me to go and then she said that she hated her friend's girlfriend. Then I told her that she need stop saying thing like that about that girl. Then we struggle [sic] with the gun and the gun when [sic] off and I just shot.

This, he asserts, makes the State's case against him one of circumstantial evidence. Powers relies on *Jackson v. State*, 684 So.2d 1213, 1229-30 (Miss. 1996), and *Steele v. State*, 544 So.2d 802 (Miss. 1989), in support of his position. In essence, Powers argues that the jury should have been instructed that not only must the State prove guilt of the attempted rape beyond a reasonable doubt, but also to the exclusion of every other reasonable hypothesis consistent with innocence. The State contends that this is not a case of circumstantial evidence in that Powers has admitted significant elements of the crime. Powers admitted shooting Lafferty and leaving her in the condition and state of undress in which her body was found. The next day, he also nervously told a friend that "something had happened" to Lafferty. Powers also wrote a note to his mother stating that "everything I do is wrong." The physical evidence shows that Lafferty was shot five times at close range, including three times to the back of the head.

¶12. Powers's argument that the charge of attempted rape is based purely a circumstantial evidence is without merit. A circumstantial evidence case is one in which there is neither an eyewitness nor a confession to the crime. *Mangum v. State*, 762 So.2d 337, 344 (Miss. 2000) (citing *Stringfellow v. State*, 595 So.2d 1320, 1322 (Miss. 1992)); *Keys v. State*, 478 So.2d 266, 267 (Miss. 1985). "Circumstantial evidence instructions should only be given in purely circumstantial evidence cases." *Tigner v. State*, 478 So.2d 293, 295 (Miss. 1985).

"There is no reason on principle why an admission by the defendant on a significant element of the offense should not also operate to render unnecessary the circumstantial evidence instruction." *Mack v. State*, 481 So.2d 793, 795 (Miss. 1985).

¶13.     Attempted rape requires that the State prove three elements: an intent to commit rape, a direct ineffectual act done towards its commission, and the failure to consummate its commission. *Ross v. State*, 601 So.2d 872, 874 (Miss. 1992); *Pruitt v. State*, 528 So.2d 828, 830 (Miss. 1988).   The physical evidence clearly reveals that there was an attempt and an direct ineffectual act performed toward the commission of rape.  Our previous attempts to use words to visually re-create the crime scene as depicted, inter alia, by these color photographs are severely deficient.  The sexually explicit position in which Lafferty's body was found, coupled with Powers's admission that he shot her and left her in the position in which she was found, take this case outside the realm of circumstantial evidence.

¶14.     Powers relies heavily on the cross-examination testimony of Dr. Stephen Hayne, the State's expert, where he testified that the wounds found on Lafferty were "consistent with defensive posturing" but that he could not testify to a "reasonable degree of medical certainty" the specific cause of the injuries.  Dr. Hayne also testified that the position of the body was "sexually explicit" and "not consistent" with consensual sex particularly in light of the fact that she was shot three times in the back of the head.

¶15.     We cannot overemphasize the importance of the color photographs of the victim at  the scene as they relate to the attempted rape charge.  Certainly, based upon all the direct evidence, and especially the physical evidence at the crime scene as depicted, inter alia, by the color photographs of the victim, the jury could reasonably find that an attempted rape occurred.  Certainly, the presence of the gun owed by Powers in this close physical encounter does not lend any credence to the proposition that Lafferty was enticing Powers to engage in sexual activity. The standard of review demands that we lend great deference to the

7

jury's verdict in finding that Powers's performed an overt act toward the commission of the crime of rape and that he was prevented from committing the crime.

¶16.    As to the third factor, the Mississippi attempt statute requires that the third element, failure to consummate, result from extraneous causes and not a voluntary cessation.  *Ross v. State*, 601 So.2d at 874 (citing *West v. State*, 437 So.2d 1212, 1214 (Miss. 1983)).  By Powers's own admission, there was a struggle over the gun between the two.  The shooting and resulting death of the victim is the extraneous cause in this case.

¶17.    Because the State's case was not based upon circumstantial evidence, the learned trial judge was correct in refusing Powers's proposed circumstantial evidence jury instructions as to the underlying offense of attempted rape.  There was sufficient evidence to support the jury's finding that Powers was guilty of attempted rape while in the commission of Lafferty's murder.  Therefore, this argument is without merit.

## II.    WHETHER POWERS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

¶18.    Powers's remaining assignments of error are ineffective assistance of counsel claims at various points in the proceedings. As such, "the benchmark [] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  The defendant must show that the counsel's performance was deficient and that the deficiency prejudiced the defense of the case.  *Stringer v. State*, 454 So.2d 468, 477 (Miss. 1984).

### A.    Motion to Suppress.

¶19.    Powers claims that the hearing on the motion to suppress was a "meaningless exercise because of the inadequate performance" of his trial counsel.  At this hearing, Powers attempted to have excluded all

statements, both verbal and written, made by him to law enforcement. Powers made two written statements. The first merely said that he "put the gun in the woods." The second was a three-page handwritten statement confessing to the killing of Lafferty. Powers also made an incriminating verbal statement after the led the police to the gun, when he said "you didn't have a case until I got the murder weapon for you." The trial court denied the motion to suppress.

¶20. First, Powers now claims that his counsel made no effort to challenge the voluntariness of the statements, raised no issues of promises, threats, or inducements, nor challenged the mental or emotional state of Powers at the time. Second, Powers claims that his counsel should have challenged the voluntariness of the statement based upon possible intoxication and whether he understood and/or properly waived his *Miranda* rights. Third, counsel made no attempt to determine why Powers testified at the hearing that he lied to the police in his statement. At the hearing, Powers merely testified that he was scared but there was no testimony elicited to any specific element necessary to challenge the admissibility of the statement. Based on the record, we disagree. Trial counsel was not deficient.

¶21. In analyzing trial counsel's actions regarding the suppression of the statement, the merits of the claim that the statement should have been suppressed are first considered. "Determining whether a confession is admissible is a finding of fact which is not disturbed 'unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence.'" *Snow v. State,* 800 So.2d 472, 495-96 (Miss. 2001) (quoting *Lee v. State,* 631 So. 2d 824, 826 (Miss. 1994) (quoting *Balfour v. State,* 598 So.2d 731, 742 (Miss. 1992))).

¶22. During the suppression hearing, Detective Berry of the Hattiesburg Police Department testified that Powers was arrested around 8:00 p.m. on June 14, 1998, in connection with a search warrant of his apartment. At 8:46 p.m. Powers was taken to the police department. Prior to any questioning, at 9:50

p.m., Officer Berry gave Powers his *Miranda* warnings. At 9:51 p.m. Powers acknowledged his rights and signed a waiver form.

¶23.     Thereafter, Powers led the police on several trips to recover the gun, all fruitless. He also wrote a statement saying he "put the gun in the woods." Eventually, Powers led the police to the gun, hidden in a shed behind his apartment. On the way back, Powers said, "you didn't have a case until I got the murder weapon for you."

¶24.     Upon returning to the station, Powers wrote a three-page confession in which he admitted killing Lafferty. Officer Berry did not give an exact time, but the statement took "a great while" for Powers to write out and was completed around 3:43 a.m. Powers had been in custody for approximately seven to eight hours. Berry testified that near the end of the statement, Powers asked to go to the restroom. Before being allowed to go, he was searched, and a note he had written to his mother was found in his crotch indicating that "everything I do is wrong." This note was recovered at 3:43 a. m.

¶25.     Officer Berry testified at the suppression hearing that Powers did not at any time appear intoxicated; instead he seemed coherent and able to comprehend and understand Berry's questions. Berry testified that he did not threaten or intimidate Powers, nor did he make any promises.

¶26.     During cross-examination of Berry, Powers's trial counsel inquired as to whether the authorities conducted a sobriety test, and, as to the length of the interrogation which occurred over the course of the night, the conditions of interrogation, and the fact that no audio or video was made of the interrogation.

¶27.     Powers then took the stand for the limited purpose of the suppression hearing and said that he lied to the police about killing Lafferty. He claimed that he got drunk, passed out or fell asleep, woke up and found her dead, and ran because he was scared. Further, Powers never claimed to be intoxicated on the

10

night he was arrested, only that he had been drinking some beer the day before he was arrested and the morning of the day of his arrest, which did not occur until 8:00 p.m.

¶28.    From the transcript of the post-trial evidentiary hearing for supplementation of the record, trial counsel testified that he and Powers had "very much" discussed whether Powers was intoxicated when he was arrested. Further, counsel discussed Powers's testimony many times.  He knew that Powers would testify that he made the statements, but was hoping to establish they were a product of duress.  Additionally, trial counsel made the point that had the authorities made some kind of recording that night, the court would be more fully apprised of the circumstances surrounding Powers's confession.

¶29.    Moreover, the record reflects that trial counsel tried diligently to suppress the statements and/or to minimize their impact.   He filed a motion to suppress and brought it up for hearing, reiterated his objections at trial, and raised the matter once again at the post-trial hearing.  In addition, trial counsel argued the following motions: a motion in limine to prevent the State from referring to the statement as "sworn", a motion for the personnel records of the officers who were to testify for the State, and a motion for the written interrogation policies of the Hattiesburg Police Department.  At trial, trial counsel cross-examined officers Berry and Suber about the length of the interrogation and the fact that it was not recorded.

¶30.    We conclude that trial counsel's performance regarding the admissibility and voluntariness of Powers's statements and the credibility of the interrogation was not deficient.  And even if more could have been brought out on these topics, the failure to do so certainly did not rise to the level of prejudicing Powers to the degree that had things gone differently, the outcome of this case would have been different.  Moreover, the admissibility of the statement was not contingent on trial counsel's performance, but rather on its voluntariness. Trial counsel was persistent in his efforts to have Powers's statements suppressed and

11

thus cannot be held to have rendered ineffective assistance for being overruled on his persistent attempts to have suppressed a clearly voluntary and therefore admissible statement.

¶31. In sum, the testimony at the suppression hearing indicated that Powers was sober and coherent when he executed a waiver-of-rights form and gave his statements to the police. Powers presented nothing to the contrary, even with every opportunity to further develop this theory. We therefore conclude trial counsel was not deficient at the suppression hearing and that Powers was not therefore prejudiced by counsel's actions. This issue is without merit.

### B. Jury Selection.

¶32. Powers next contends that trial counsel was ineffective during jury selection for failing to raise a *Batson* challenge against the State. *See Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The State argues this issue is now waived for failure to raise it at trial and, alternatively, that Powers's trial counsel was not ineffective on this point.

¶33. The State exercised six peremptory challenges. There is no record of the race of the individual jurors excused thereby. It appears, however, that five of them were women. The defense exercised nine peremptory strikes. Upon conclusion, the judge asked Powers: "On the record, Mr. Powers, I want to make certain you had input into the selection of the jury and that you are satisfied with the composition of the jury that has been selected." Powers informed the trial judge that he was satisfied.

¶34. Thereafter, trial counsel raised the *Batson* issue in Powers's Motion for J.N.O.V. or For a New Trial, and claimed that the trial court should have allowed *Batson* challenges against the State. The trial court indicated surprise that no such challenges were raised, given the court's inquiry as to Powers's satisfaction with the composition of the jury, but that it was not the court's job to do so. Trial counsel agreed.

¶35. At the subsequent evidentiary hearing for supplementation of the record, trial counsel indicated that he was not an expert on *Batson* challenges, but that no one was. He stated that he had read *Batson* numerous times, including in preparation for Powers's trial. He also attended a two-day seminar on jury selection during which *Batson* was discussed. The State argues that based on these facts, trial counsel was not ignorant of *Batson*, despite Powers's present argument that his counsel was ineffective during jury selection on this basis. We agree with the State's assessment.

¶36. Morever, the record includes defense counsel's Motion to Discover Information Regarding Potential Jurors in which he stated that without access to such information, "neither the defense, nor the Court could determine if the State was accepting similarly situated jurors on racial, gender or other criteria disallowed by *Batson* and its progeny." This motion further stated that "the defense . . . has the right to rebut the prosecution's strikes and this information is crucial to the Court's task of making an on-the-record factual determination of the merits of the prosecution's strikes." Lastly, the motion stated that without information on the jurors, it would be "virtually impossible for the defense to knowingly begin an examination of whether the prosecution's strikes are based on neutral and comparable legal reasons and not on racial, gender or other disallowed or illegal reasons." Trial counsel also brought this motion on for hearing.

¶37. Given these facts, Powers's ineffective assistance argument lacks merit. Indeed, Powers has not demonstrated the requisite deficiency and prejudice. There is no indication of the race of any of the stricken jurors, and the record is not clear as to their gender except for one. We have said:

> The record, however, does not reflect the racial composition of the jury as seated. The race of prospective jurors is not indicated on questionnaires, which were designed by the defense and completed prior to trial, and is noted only where specifically requested by the defendant in several instances during the jury selection process, when those individuals were struck from the venire by either party. In *Hansen v. State*, 592 So.2d 114 (Miss.

13

1991), where the record likewise did not indicate the race of the jurors, this Court rejected the appellant's *Batson* challenges, noting that it " 'must decide each case by the facts shown in the record, not assertions in the brief ...' " *Hansen*, 592 So.2d at 127, citing *Burney v. State*, 515 So.2d 1154, 1160 (Miss. 1987), and further that, the burden is on the appellant to make sure that the record contains " 'sufficient evidence to support his assignments of error on appeal.' " *Id.*

*Jackson v. State*, 684 So.2d 1213, 1224 (Miss. 1996).

¶38. There was not a *Batson* issue for trial counsel to raise. Further, the record indicates race-neutral reasons for striking each of the six jurors at issue. The record reflects neutral reasons for the State's peremptorily striking each prospective juror. The State's peremptory challenge S-1 was exercised on a juror who knew one of the testifying officers and had child care problems. S-2 was exercised on a juror who was on medication, was concerned about her health, migraine headaches, and did not wish to serve. S-3 was exercised on a juror who was taken on individual voir dire, having indicated that she did not believe in the death penalty on her questionnaire but having scratched through the response and indicated she wanted to be heard in chambers on the issue. S-4 was exercised on a juror who thought she was related to the District Attorney, although she did not know him. She also indicated that she was not pleased with the outcome of a lawsuit she had filed. S-5 was exercised on a juror whose questionnaire indicated some distrust of police testimony, having indicated that the police "try to tell the truth," as opposed to "always tell the truth" or other choices. S-6 was exercised on a juror who requested to be removed citing preoccupation with her sick mother who was in the care of this juror and this juror's sister. She was also concerned about the potential length of trial.

¶39. We find based on the foregoing that Powers would not have had a viable *Batson* challenge. Therefore, it is inconceivable how counsel could have been ineffective, and thus Powers's case prejudiced by failure to raise such a challenge. This issue is without merit. **C.     A Coherent Defense.**

14

¶40.    Powers next argues that trial counsel failed to combine elements which would have given Powers a plausible, coherent defense and as such trial counsel was ineffective.   Appellate counsel makes much of the fact that Powers testified during the motion hearing that he had lied when giving the confession because he was "scared" but did not testify at trial.   Powers also contends that trial counsel was ineffective in offering the testimony of Dr. Michael West after the court refused to accept him as an expert in crime scene reconstruction.

¶41.    Powers's trial counsel clearly wanted to prove that Powers did not commit the underlying crime of attempted rape. He emphasized the lack of physical evidence and the fact that earlier the day of the murder Lafferty supposedly indicated she had a sexually transmitted disease.  Given this fact, trial counsel argued that Powers did not and would not have wanted to rape Lafferty.  The record also makes clear that trial counsel contested the killing by developing the fact that Powers's gun and bullets were not conclusively linked to the killing by forensic testing.   The State argues that this is an acceptable strategy regarding the charge of attempted rape, especially in light of Powers's confession that he killed Lafferty and actually led the police to the gun.   We agree.

¶42.    Powers's appellate counsel now argues, however,  that trial counsel should have had Powers take the stand at trial to explain that he lied to the police about the facts of the killing.  Appellate counsel faults trial counsel for not putting Powers on the stand to admit that he lied to the police.  As the State explains: "There is no case anywhere, and, of course Powers fails to cite any authority for the proposition that trial counsel commits error of constitutional proportions by declining to force the defendant to take the stand at trial."  Further, the record reflects that Powers did not wish to testify and was satisfied with the actions of his attorney.

¶43.    We find applicable a recent Fifth Circuit holding on a similar claim.

> Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." ***Lamb v. Johnson***, 179 F.3d 352, 358 (5th Cir.), *cert. denied,* 528 U.S. 1013, 120 S.Ct. 522, 145 L.Ed.2d 401 (1999). There is nothing in the record to suggest that . . . counsel blundered through the trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." ***Garland v. Maggio***, 717 F.2d 199, 206 (5th Cir. 1983). There is no hint of unfairness; in this case, counsel's tactic may have been the best available and the record amply reflects that [the Defendant] consented to its use.

***United States v. Jones***, 287 F.3d 325, 331 (5th Cir. 2002). Given this authority and the record facts of trial counsel's performance in this case, we conclude that trial counsel pursued a coherent defense.

¶44. Powers additionally criticizes trial counsel for calling Dr. West, the county coroner, to the stand. The record reflects that trial counsel attempted to have Dr. West qualified as an expert, but the court declined to rule citing the fact that the testimony offered was not expert testimony. Ultimately Dr. West testified that no one could say exactly what happened to Lafferty based on the physical evidence. He indicated that he could not tell whether she was putting on or pulling of her shorts at the time of her death, or whether someone else had done so. Nor could he determine whether Lafferty may have been going to the restroom or bedroom from the hallway. Nor could he conclude how she came to be in the position in which she was found, nor did he see anything other than her position that indicated rape.

¶45. Powers claims, however, that trial counsel, through the testimony of Dr. West, "sunk to the level of attempting to assassinate the victim's character with allegations that she suffered from herpes." But the record reflects that this information was placed before the jury, in part by the State, *prior to* Dr. West's testimony. Eddie Barnes testified that, on the day of the murder, Lafferty claimed she had herpes. The record reflects that the court was disturbed with trial counsel for asking Dr. West about the herpes, when in fact, Dr. West had been barred by the court from seeking Lafferty's medical records prior to trial. When

the State objected to the question about herpes, as to its relevance and redundancy, the court excused the jury and then expressed surprise that trial counsel raised the question when he knew that Dr. West had not been permitted to review the medical records.

¶46.    Powers's appellate counsel now argues that this activity created an aura of dishonesty that affected Powers's case.  The issue about this interaction, however, was not as to the admission of Lafferty's condition, but as to whether Dr. West had subverted the court's order disallowing him access to Lafferty's medical records.   We do not see how trial counsel's questioning of Dr. West as to his observations or as to whether he knew Lafferty had a venereal disease, rises to the level of ineffective and prejudicial assistance.  Since the evidence of herpes was already before the jury, and since  trial counsel was questioning the coroner who worked the case, the question was not per se inappropriate as to Lafferty's character.

¶47.    Trial counsel pursued a clear defense strategy.  Indeed, the record does not reflect that trial counsel was ineffective in putting on Powers's defense.  To the contrary, trial counsel and Powers decided that it would not be in Powers's best interest to take the stand and be subject to cross-examination by the State.  Trial counsel also extensively called into question the gun and the forensics regarding the bullet fragments.  Dr. West testified that no one could really know what was happening between Lafferty and Powers immediately preceding her death.  Nothing here demonstrates deficiency in counsel's performance or prejudice to Powers's case.  This issue is without merit.

### D.    Reduction of the Charge to Simple Murder or Manslaughter.

¶48.    Powers next argues that trial counsel was ineffective for failing to move to have the capital murder charge reduced to manslaughter.  First, the charge, or reduction thereof,  is completely in the discretion of the prosecutor and ultimately the trial judge at the trial stage.  Second, trial counsel attempted twice to have

17

the indictment quashed. Trial counsel also moved for a directed verdict after the State rested. Powers then renewed the motion after the defense rested.

¶49. We are unable to find any basis in the record to support a reduction to manslaughter given the fact that Powers could not have "accidently" shot Lafferty at point blank range and near contact range in the head five times. As trial counsel explained at the evidentiary hearing to supplement the record: "Well, if they struggled over the gun and the gun went off, I think common horse sense tells you it didn't accidentally go off five times causing wounds to the fact, side of the head and the back of the head." Further, Powers cites no applicable authority to support this contention.

¶50. Since the record is clear that trial counsel consistently fought the capital murder charge, Powers's argument that his trial counsel was ineffective in failing to move to reduce the charge is without merit.

### E. Jury Instructions.

¶51. Powers asserts that trial counsel was ineffective for failing to request lesser-included offense or lesser-offense instructions on murder or manslaughter. This claim is both contradicted by the record and is legally without merit.

¶52. The record reflects that an instruction on the lesser-included offense of murder was submitted to the jury at the request of the State. Moreover, Instruction S-4, which was granted by the trial judge, gave the jury the option of finding Powers (1) guilty of capital murder, (2) of murder, or (3) not guilty. Indeed, this jury was amply instructed on the lesser-included offense of murder, although by the State. It is of no moment as to whether the prosecution or the defense offers an instruction, for once the jury instruction is granted by the trial judge, it becomes the court's instruction. Powers's trial counsel cannot thus be held deficient in his performance for failure to submit a simple murder instruction since the trial judge had already granted an appropriately worded murder instruction submitted by the State.

18

¶53. In addition, Powers claims he was entitled to a manslaughter instruction, since he claimed that during a struggle with Lafferty the gun discharged. Trial counsel indicated at the post-trial supplemental hearing that he never believed this statement, and found no evidence independent of the statement to support it, and that in later discussions Powers had told him this is *not* what happened.

¶54. It is clear that trial counsel made the strategic decision that a manslaughter instruction was not warranted. We find it reasonable for trial counsel not to pursue a weak theory that is unsupported by the evidence that Lafferty was shot five times in the head at either point blank or close range. Trial counsel was not therefore deficient for failing to pursue a theory which he believed to be false. Powers's claim that counsel was ineffective here is completely without merit.

### F. Sentencing Phase.

¶55. Powers's final claim is that trial counsel was deficient in failing to (1) investigate and present mitigation evidence, (2) give adequate closing arguments, and (3) object to the two aggravating circumstances submitted by the State. We conclude, based on the record, that Powers has not demonstrated the requisite showings under *Strickland* and is, therefore not entitled to relief.

¶56. The record reflects that both sides resubmitted all of the evidence they presented in the guilt phase. Based on the information available to him, Powers's trial counsel made the decision not to put on additional mitigation evidence but instead to beg the jury for mercy. Counsel also argued the weakness of the evidence of the aggravating circumstances and asked the jury to consider the mitigators about which it had been instructed.

¶57. But Powers now claims that trial counsel was ineffective for not conducting separate investigations from his guilt-phase preparation. We have said:

This Court gives much deference to an attorney's trial tactics. As this Court has stated:

19

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf.* ***Engle v. Isaac***, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

***Lambert v. State***, 462 So.2d 308, 316 (Miss. 1984), citing ***Strickland***, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to have competent counsel.

***Mohr v. State***, 584 So.2d 426, 430 (Miss. 1991). On the present record, we cannot conclude that counsel was ineffective.

¶58. The record reflects that trial counsel personally interviewed family members and friends of Powers, the girlfriend of Powers's brother, the officers involved, Dr. West, Powers's mother, and Powers. Counsel also spoke with several of Lafferty's friends and reviewed the State's discovery, including witness statements and photos. Counsel also filed a list of eleven potential witnesses. Trial counsel also ultimately concluded that while Powers and his family were in the best position to know of any possible mitigating witnesses, the family was not very supportive. Powers submitted at the post-trial supplemental hearing affidavits of witnesses who said that they would have been willing to testify on Powers's behalf, including those of Powers's mother, his brother-in-law, his maternal aunt, and a friend and neighbor. However, Powers's mother testified on behalf of the State in the guilt phase.

¶59. Powers submits that evidence of his drinking problem should have been heard during the sentencing phase. In doing so, he faults trial counsel and claims that he was prejudiced as a result. This type of

evidence is double-edged, however, and could have prejudiced Powers. This type of evidence can be detrimental, and counsel is not ineffective for choosing not to elaborate on it.

¶60.    As to trial counsel's pursuit of mitigating factors such as Powers's age, family background, lack of a criminal record, his work record, lack of education, or social and or psychological environment as a child, counsel's testimony at the post-trial supplemental hearing indicated there was very little to be found relative to these factors. The affidavits submitted after the case indicated that Powers had a nice home life and was emotionally developed and also that Powers was a high school graduate who had attended college. Trial counsel should not be faulted for failing to put on mitigation evidence which apparently did not exist. *Cf. Williams v. Taylor,* 529 U.S. 362, 370-71, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (counsel defective for failing to present evidence that the defendant was committed at age 11, suffered abuse and neglect, and that he was borderline mentally retarded, had suffered head injuries, and may have had organically rooted mental impairments). Further, as to mitigation evidence, the State would have been allowed to rebut such evidence through cross-examination, introduction of rebuttal evidence, and in its closing argument to the jury.

¶61.    Powers also contends that trial counsel was ineffective during closing argument at the sentencing phase. Counsel, instead of arguing Powers's family and educational background, chose to beg the jury for mercy. He beseeched the jury to consider the finality of death and begged the jurors to search their conscience. He argued that the evidence did not support the aggravating circumstances, and he asked the jury to consider the mitigating factors that were submitted. In *Manning v. State,* 735 So.2d 323, 347-48 (Miss. 1999), this Court found that trial counsel's strategy of pleading for mercy was not a poor strategic choice based on the existing facts.

¶62. The same holds true here. Powers confessed to killing Lafferty, and Lafferty was shot in the head at point blank or close range five times. Trial counsel was not ineffective because he chose to pursue the path of mercy instead of rehashing the information produced during the guilt phase, producing unsupportive family members, emphasizing evidence of a drinking problem, and utilizing testimony of his drinking friends.

¶63. Powers's final argument as to the effectiveness of counsel at the sentencing phase is that trial counsel failed to object to the two aggravating circumstances submitted by the State. Those were: (1) whether the capital offense was committed while the defendant was engaged in the commission of or an attempt to commit the crime of rape and (2) whether the crime was especially heinous, atrocious or cruel.

¶64. As to the attempted rape aggravator, the attempted rape allegation has been considered at length in the first issue of this appeal, and we have found that the evidence was sufficient to support the jury's finding. Counsel consistently argued that the evidence was not sufficient, that it was purely circumstantial, but was consistently overruled by the trial judge. Further, in closing arguments, he argued that the evidence was not sufficient to support the charge of attempted rape. Powers's trial counsel cannot therefore be held ineffective as to this aggravating factor.

¶65. Finally, since Lafferty was shot five times in the head, the effectiveness of counsel for not objecting to the factor that this crime was especially heinous, atrocious or cruel is not constitutionally objectionable. The pathologist indicated that the majority of the gunshot wounds would not have rendered Lafferty unconscious. Lafferty's death was classified as lingering and not immediate. These facts are enough to make the application of heinous, atrocious or cruel factor constitutionally unobjectionable. *See generally Stevens v. State,* 806 So.2d 1031, 1061 (Miss. 2001) ("the mental anguish and psychological torture suffered by the victim prior to the infliction of the death producing wound may be considered with respect to this factor and make its application unobjectionable."); *Brown v. State,* 798 So.2d 481, 494 (Miss.

2001) (failure to raise meritless objections is not ineffective lawyering); *Chase v. State,* 699 So.2d 521, 541-42 (Miss. 1997) (trial counsel was not ineffective for failing to object to the submission of an aggravator that was supported by the evidence); *Cole v. State,* 666 So. 2d 767, 778 (Miss. 1995) (holding that defense counsel simply had no reason to object under Mississippi law).

¶66.    Based on the foregoing analysis of the record and of the law, it is clear that trial counsel was effective in representing Powers.  We certainly cannot by any stretch of the imagination conclude on this record that the performance of Powers's trial counsel was deficient; and, even assuming arguendo that we could,  there is absolutely no indication in this record that any such perceived deficiency prejudiced the defense of this case.  Indeed, given the evidence in this case, Powers has failed to produce anything that would "undermine the confidence in the outcome" of the jury's determination of guilt as to Lafferty's murder.  Finally, we note that Powers stated on the record that he did not want to testify and that he was satisfied with his attorney's services.   Thus, for all of the foregoing reasons, Powers's various claims that he received ineffective assistance of counsel at his trial are without merit.

## SECTION 99-19-105(3) REVIEW

¶67.    We must also review the death sentence in accordance with Miss. Code Ann. § 99-19-105(3) (Rev. 2000), which states:

> (3) With regard to the sentence, the court shall determine:
>          (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
>          (b) Whether the evidence supports the jury's or the judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101;
>          (c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and
>          (d) Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating

circumstances or whether the inclusion of any invalid circumstance was harmless error or both.

¶68. Under this analysis, there is no evidence supporting a finding that the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. As previously discussed, the evidence supports the trial court's finding that the statutory aggravating factors of engaging in the commission of or attempting to commit the crime of rape and committing a heinous, atrocious or cruel crime were proven beyond a reasonable doubt. *See Manning v. State*, 765 So.2d 516, 521-22 (Miss. 2000); *Wilcher v. State*, 697 So.2d 1087, 1113 (Miss. 1997); *Wiley v. State*, 691 So.2d 959, 966-67 (Miss. 1997). These cases cite numerous cases decided by this Court in which the death penalty was determined not to be disproportionate when comparing the facts and circumstances of the case under consideration with those of other cases. Here, the victim was found dead in a prone position with her legs spread open more than ninety degrees and nude from the waist down except for her wadded up shorts around her left ankle. She had defensive posturing wounds on her arm, hand and knee. Although the victim was menstruating, no feminine hygiene products were found at the scene. The victim was shot five times in the head and the pathologist testified that the majority of the gunshot wounds would not have rendered the victim immediately unconscious. The victim's death was described as lingering. Upon comparison to other factually similar cases where the death sentence was imposed, the sentence of death is not disproportionate in this case. Giving the equally heinous nature of the crime committed here, imposition of the death penalty on Stephen Elliot Powers is neither excessive nor disproportionate in comparison to his crime. Having given individualized consideration to Powers and the crime in the present case, and having carefully reviewed the death penalty cases listed in the attached Appendix, this Court concludes that there is nothing about Powers or his crime that would make the death penalty excessive or disproportionate in this case.

24

# CONCLUSION

¶69. Powers's claims that the evidence was insufficient and that his counsel was ineffective are without merit. We find that there was sufficient evidence to support the underlying charge of attempted rape and that the State's evidence concerning the underlying charge was not based upon circumstantial evidence. We also find that Powers's trial counsel was not ineffective. Therefore, we affirm both the capital murder conviction and sentence of death imposed upon Stephen Elliot Powers in the Circuit Court of Forrest County.

¶70. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION, AFFIRMED.**

**SMITH, P.J., WALLER, COBB AND EASLEY, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRAVES, J. PITTMAN, C.J., AND DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶71. Our mechanism for the dispensation of justice is a trial by jury following the procedures set out by law. While application of the law should always result in justice, the law often proves itself to be an imperfect guide. Furthermore, when trials are not conducted according to the guidelines set forth by our law, the result is often retribution, not justice.

¶72. I am often reminded that, as a Justice of this Supreme Court, my task is to ensure that the law of this state is followed. I fear that some have lost sight of that task in considering the case before us, yet I cannot blame them. The evidence in this case is the type which would bring forth emotion from even the most stoic of jurists. Nevertheless, while a "sense of justice" begs us to reach one decision in this case, I am convinced

25

that the law and the evidence dictate otherwise. While the conviction of murder should be affirmed, this case should be remanded for resentencing. Accordingly, I dissent.

## I. WHETHER THE EVIDENCE OF ATTEMPTED RAPE WAS INSUFFICIENT TO SUPPORT THE CHARGE OF CAPITAL MURDER.

¶73. Let us be "very clear" about what the majority is announcing in this case. First, it declares that for the purposes of a charge of capital murder, a circumstantial evidence instruction is not warranted to prove the underlying felony when one has admitted to causing the death of the victim. Second, it declares that when a body has been moved post mortem into a sexually explicit position, the position may automatically be used as direct physical evidence of the position the victim was in during an attempted rape that would have occurred before the death of the victim. Needless to say, I do not agree with these propositions.

### A. Whether Powers's admission to causing the victim's death obviates the need for a circumstantial evidence instruction.

¶74. Circumstantial evidence instructions are required "when the prosecution is without a confession and without eyewitnesses to the gravamen of the offense charged." *Swinney v. State*, 829 So.2d 1225, 1236 (Miss. 2002) (quoting *Woodward v. State*, 533 So.2d 418, 431 (Miss. 1988)). Thus, as the majority notes, an admission to any significant element of the offense removes the need for such an instruction. *See Mack v. State*, 481 So.2d 793, 795 (Miss. 1985). However, the majority has cited a case where this Court has held that a circumstantial evidence instruction is not warranted for an underlying felony in a capital murder case solely based upon the fact that the defendant has admitted to causing the death of the victim and not to the underlying felony.

¶75. In *Swinney v. State*, we held that a confession to a shooting could be direct evidence to an underlying felony for capital murder purposes. 829 So.2d at 1237. Swinney admitted to pointing a gun at

26

the victim and stated that the gun accidentally fired as she attempted to unjam it. *Id*. at 1236. The underlying felony in this case was robbery. Since an essential element of robbery is the use of force or intimidation, we held her admission that she pointed the gun at the victim as confession of an essential element of the crime. *Id*. Therefore, we held that the circumstantial evidence instruction was not required. *Id*. at 1237.

¶76.    Better yet, in *Moody v. State*, 841 So.2d 1067 (Miss. 2003), this Court dealt with a capital murder based on sexual battery. Therein, we recognized that an admission to causing the death of the victim is not a confession to an essential element of the underlying offense. *See id*. at 1095. However, in that case, we found that there was enough direct physical evidence in the totality, including sperm samples produced by a vaginal slide, so that a circumstantial evidence instruction was not warranted.[1] *Id*. at 1095-96.

¶77.    These cases ought to be instructive. We know from *Moody* that confessing to causing the death of the victim is not the same as confessing to the underlying felony. Therefore, we are left to apply the *Swinney* analysis and determine if by his admission, Powers admitted to an essential element of the offense. However, the majority fails to mention any element of attempted rape that is admitted in Powers's statement. Therefore, his confession to causing the victim's death is not cause alone to do away with the need for a circumstantial evidence instruction and to hold otherwise is in error.

---

[1] The Court stated that "Moody also confessed to the capital murders, which is in and of itself direct evidence." 841 So.2d at 1096. However, such language is confusing. The Court noted in that case that while only the portion of his admission regarding causing the victim's death was admitted into evidence, that he also confessed to the sexual battery. See *id*. at 1095. Therefore, Moody did confess to capital murder. Furthermore, the Court's decision was based on the totality of the physical evidence, so this Court did not hold that by itself, confession to causing the victim's death is sufficient to obviate the need for a circumstantial evidence instruction for the underlying felony. See *id*. at 1095-96.

### B.  *Whether there was enough direct physical evidence of attempted rape to obviate the need for the circumstantial evidence instruction.*

¶78.    Direct evidence is defined as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption."  Black's Law Dictionary 577 (7th ed. 1999). On the other hand, circumstantial evidence is defined as "[e]vidence based on inference and not on personal knowledge or observation." *Id*. at 576.  In addition, "[e]vidence of some collateral fact, from which the existence or non-existence of some fact in question may be inferred as a probable consequence, is termed circumstantial evidence." *Id*. (quoting William P. Richardson, The Law of Evidence § 111, at 68 (3d ed. 1928)).

¶79.    The majority states that three pieces of "direct physical evidence" obviate the need to have given the circumstantial evidence instruction: (1) The sexually explicit position in which the victim's body was found, (2) Powers's admission that he left the body in the position in which it was found, and (3) his admission that he caused the victim's death.  However, none of this is <u>direct</u> evidence that an attempted rape occurred.

### 1. The position of the victim's body

¶80.    The majority cites the photographs of the position of the victim's body as physical evidence that an attempted rape occurred.  However, based on the above definitions, I remain convinced that these powerful images are still not direct evidence of an attempted rape.  Furthermore, their probative value even as circumstantial evidence is questionable.

¶81.    The photographs show the victim's body lying face up on the house floor.  Naked from the waist down, the victim's legs are spread in a position that the prosecution's expert best described as "inconsistent" with consensual sexual activity.  Despite the emotional value of the photographs, they lack evidentiary value.

28

To be correctly described as direct evidence, the position that the photographs depicted should prove an essential fact "without inference or presumption."

¶82.   The position of the body is essential to the majority's holding in this case. However, Powers indicated that he moved the body post mortem. In addition, despite the fact that the victim is lying face up with the back of her head against the floor, the evidence clearly showed that she suffered three gunshot wounds to the back of the head. Simply stated, this is not the position that the body would have been in during the alleged attempted rape. Therefore, the position is not directly, or circumstantially, probative of an attempted rape. A gigantic inferential leap is required to reach the majority's conclusion. Therefore, this piece of evidence is insufficient to avoid the necessity of a circumstantial evidence instruction.

### 2. Powers's admission that he left the body in the position in which it was found

¶83.   Powers's admission to moving the body post mortem into the position in which it was found is no better fit into the definition of direct evidence than the position itself. Again, the position is not directly probative of an attempted rape. In *Swinney*, we did hold confessions to essential elements of a crime to be direct evidence of the crime. See 829 So.2d at 1237. However, Powers's admission is not directly probative of any element of attempted rape. As stated above, without the aid of an inference, the probative value of this admission remains in serious question.

### 3. Powers's admission that he caused the victim's death

¶84.   Much like the above admission, Powers's admission that he caused the victim's death is not directly probative of any element of attempted rape. While he admits fault, he never admits any intentional act. Simply stated, there is not one element of rape to which this statement is directly probative. Again, we are left to inferences to give it any value towards the charge of attempted rape, making it circumstantial evidence, at best.

¶85.    To reiterate, none of this evidence is directly probative of attempted rape and if this kind of evidence is, then we have no further need for a circumstantial evidence instruction.  This evidence depends on the stacking of inferences for it to be in any way probative of rape.  Therefore, a circumstantial evidence instruction should have been given.

¶86.    Having seen the same pictures as the majority, under these circumstances I cannot do a "bull frog's leap" that attempted rape occurred.  Our job is to ensure that the law is followed, not that retribution is meted out.  Our responsibilities towards ensuring that the law is followed are at their greatest in cases such as this.  However, in this case, the law has not been followed because the circumstantial evidence instruction was not given. To properly dispose of this matter I would affirm only on  the lesser offense of simple murder and remand for resentencing.

¶87.    Accordingly, I dissent.

**GRAVES, J., JOINS THIS OPINION IN PART.**

## APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Walker v. State,* 815 So.2d 1209 (Miss. 2002). *following remand.

*Bishop v. State,* 812 So.2d 934 (Miss. 2002).

*Stevens v. State,* 806 So.2d 1031 (Miss. 2002).

*Grayson v. State,* 806 So.2d 241 (Miss. 2002).

*Knox v. State,* 805 So.2d 527 (Miss. 2002).

*Simmons v. State,* 805 So.2d 452 (Miss. 2002).

*Berry v. State,* 802 So.2d 1033 (Miss. 2001).

*Snow v. State*, 800 So.2d 472 (Miss. 2001).

*Mitchell v. State,* 792 So.2d 192 (Miss. 2001).

*Puckett v. State,* 788 So.2d 752 (Miss. 2001). * following remand.

*Goodin v. State,* 787 So.2d 639 (Miss. 2001).

*Jordan v. State,* 786 So.2d 987 (Miss. 2001).

*Manning v. State,* 765 So.2d 516 (Miss. 2000). *following remand.

*Eskridge v. State,* 765 So.2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999).

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999).      *remanded for *Batson* hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999). *remanded for *Batson* hearing.

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

# DEATH CASES AFFIRMED BY THIS COURT

## (continued)

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi,* 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State*, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d 165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi*, 494 U.S. 1075 (1990) vacating and remanding *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So.  2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

## DEATH CASES AFFIRMED BY THIS COURT

## (continued)

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

 \* Case was originally affirmed in this Court but on remand from U. S. Supreme  Court, case was remanded by this Court for a new sentencing hearing.

# DEATH CASES REVERSED AS TO GUILT PHASE
## AND SENTENCE PHASE

*Flowers v. State,*  842 So.2d 531 (Miss. 2003).

*Randall v. State,* 806 So. 2d 185 (Miss. 2002).

*Flowers v. State,* 773 So.2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So.2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

**DEATH CASES REVERSED AS TO GUILT PHASE**
**AND SENTENCE PHASE**
(**continued**)

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

# DEATH CASES REVERSED
## AS TO PUNISHMENT AND REMANDED
## <u>FOR RESENTENCING TO LIFE IMPRISONMENT</u>

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO
# PUNISHMENT AND REMANDED FOR A NEW TRIAL
# ON SENTENCING PHASE ONLY

*King v. State,* 784 So.2d 884 (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi*, 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State* 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) vacating and remanding,*Pinkney v. State,* 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *Jones v. Mississippi,* 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State*, 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984). * Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.